**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

|                                        |     |                        |
| -------------------------------------- | --- | ---------------------- |
|                                        | §   |                        |
| MICHAEL BLAHNIK and REBECCA            | §   |                        |
| BLAHNIK,                               | §   |                        |
|                                        | §   |                        |
|     Plaintiffs,    | §   |                        |
|                                        | §   |                        |
| vs.                                    | §   | C.A. NO. C-06-410      |
|                                        | §   |                        |
| BASF CORPORATION, et al.,              | §   |                        |
|                                        | §   |                        |
|     Defendants.    | §   |                        |

**ORDER OF REMAND**

On this day the Court *sua sponte* considered its subject matter jurisdiction over the above-styled action.  For the reasons discussed below, the Court finds that subject matter jurisdiction is lacking, and the above-styled action is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the County Court at Law No. 3 in Nueces County, Texas, where it was originally filed and assigned Cause Number 06-61242.

**I.   BACKGROUND**

On May 8, 2006, Plaintiffs Michael Blahnik and Rebecca Blahnik ("Plaintiffs") filed suit in the County Court at Law No. 3 in Nueces County, Texas, asserting claims of negligence, strict products liability, and breach of warranty against ten different corporate Defendants (collectively "Defendants"), including Safety-Kleen Systems, Incorporated.  (Def.'s Notice of Removal ("NOR") at ¶ 1; Def.'s Ex. ("DEX") C.)  In particular, Plaintiffs alleged that Michael Blahnik "worked as an automotive body repairman and painter

from 1966 to 1985" and that, in the course of his work, he was exposed to benzene-containing products, including paints, solvents, and chemicals, manufactured and supplied by the various Defendants. (Pl.'s Orig. Pet. ("POP") at ¶ 15.)  Plaintiffs alleged that these benzene-containing products are carcinogenic and that, as result of his exposure to the Defendants' products, he developed Acute Myelogenous Leukemia. (POP at ¶ 15.)  Plaintiffs sought actual and punitive damages, including reasonable medical expenses, physical impairment and disfigurement, loss of earnings, loss of consortium, and mental anguish. (POP at ¶¶ 27a-27j.)

On September 22, 2006, Defendant Safety-Kleen Systems, Incorporated ("Safety-Kleen") removed the case pursuant to 28 U.S.C. § 1441, alleging two bases for federal subject matter jurisdiction: (1) federal officer jurisdiction under 28 U.S.C. § 1442(a), and (2) federal enclave jurisdiction. (Notice of Removal ("NOR") at ¶¶ 12-18.)  Safety-Kleen also alleged that the removal was timely and all procedural prerequisites to removal had been satisfied. (NOT at ¶¶ 19-27.)  Therefore, Safety-Kleen argued that removal under § 1441 was proper.

**II. DISCUSSION**

A federal court's "first inquiry" must be whether it has subject-matter jurisdiction. <u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 576 (5th Cir. 2004) (en banc).  As such, "federal courts are duty-bound to examine the basis of subject matter jurisdiction

*sua sponte*." <u>Union Planters Bank Nat'l Ass'n v. Salih</u>, 369 F.3d 457, 460 (5th Cir. 2004).   This is because "[f]ederal courts are courts of limited jurisdiction." <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912, 916 (5th Cir. 2001) (citing <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994)).  A court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." <u>Howery</u>, 243 F.3d at 916 (citations omitted); <u>see also</u> <u>Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.</u>, 99 F.3d 746, 751 (5th Cir. 1996) (stating that the "party invoking the removal jurisdiction of the federal courts bears a heavy burden"); <u>Aetna Cas. & Sur. Co. v. Hillman</u>, 796 F.2d 770, 775 (5th Cir. 1986) ("The party seeking to invoke the jurisdiction of the federal court has the burden of proving that jurisdiction exists").   In evaluating jurisdiction, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002); <u>see also</u> <u>Acuna v. Brown & Root, Inc.</u>, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction").

## A.  Federal Officer Jurisdiction

Defendant Safety-Kleen argues that this Court has "federal officer jurisdiction" over this case.  28 U.S.C. § 1442(a) provides

for federal officer jurisdiction, ensuring "a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241-42 (1981). In particular, § 1442 provides that:

> (a) A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or . . . or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The right of a federal officer to remove "is absolute for conduct performed under color of federal office and . . . should not be frustrated by a narrow, grudging interpretation of [the statute]." See, e.g., Manypenny, 451 U.S. at 242 (quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969)); State of La. v. Sparks, 978 F.2d 226, 232 (5th Cir. 1992). In order to invoke federal officer jurisdiction and establish a right to remove under § 1442, a defendant must prove three elements: (1) "[t]he defendants must first demonstrate that they are 'persons' within the meaning of the statute"; (2) second, the defendants must show that they "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims"; and (3) third, the defendants must assert "a colorable federal defense" to

-4-

the plaintiff's claims.  Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398-400 (5th Cir. 1998); see also, e.g., Jefferson County v. Acker, 527 U.S. 423, 431 (1999); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006); Watson v. Philip Morris Cos., 420 F.3d 852, 855-56 (8th Cir. 2005); Miller v. Diamond Shamrock Co., 275 F.3d 414, 417-18 (5th Cir. 2001).

Defendants have failed to meet the three elements needed to sustain federal officer jurisdiction.  First, Defendants have failed to provide any evidence or indication that the conduct for which they are being sued was conducted "pursuant to a federal officer's directions" or "under color of federal office."  Winters, 149 F.3d at 398-400.  This element requires the Defendants to show that their allegedly-tortious conduct was "performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."  Watson v. Philip Morris Cos., 420 F.3d 852, 857 (8th Cir. 2005).  The mere fact that the federal government or a federal officer purchases or uses products manufactured by the Defendants is not enough to support federal officer jurisdiction, rather the Defendants must show that the federal government maintained control over the manufacture of the products.  See, e.g., Winters, 149 F.3d at 398-400; Watson, 420 F.3d at 857.  In other words, there must be enough federal involvement in the Defendants' conduct for the court to find that a substantial "federal interest in the matter exists."  Winters, 149 F.3d at 398 (citing Willingham, 395 U.S. at 406; Mesa v. California, 489 U.S. 121, 139 (1989)).  Defendant has utterly

-5-

failed to make the required showing in this case.  In support of federal officer jurisdiction, the removing Defendant provided this Court only with a conclusory statement that "[i]f not for the directive of the federal government to manufacture or sell the product to it, Defendants would not be involved in this litigation."  (NOR at ¶ 17.)  There is no indication in the record, however, that the federal government ever "directed" the Defendants to manufacture the products in question.  Moreover, even if the federal government did "direct" the manufacture of the offending products, there is no evidence that the government "specified the composition" of the offending products, or exercised the kind of "direct control" that courts have required to support federal officer jurisdiction in products-liability cases. See Winters, 149 F.3d at 398 (noting that the federal government did not buy Agent Orange as an "off-the-shelf product" but rather "expressly issued detailed and direct orders to the defendants to supply a certain product . . . with the specifications for the [product] (and its packaging) specifically dictated by the government").  Therefore, Defendants have failed to meet the second element of federal officer jurisdiction.

Furthermore, even if Defendants could prove that they acted pursuant to a federal officer's directions or under color of federal office, Defendant has completely failed to meet the third element of the case: the assertion of "a colorable federal defense" arising out of their official duties. See, e.g., Winters, 149 F.3d

at 400 (5th Cir. 1998); <u>Manypenny</u>, 451 U.S. at 241 ("[R]emoval under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties"); <u>Mesa</u>, 489 U.S. at 129 ("[A]n unbroken line of this Court's decisions extending back nearly a century and a quarter have understood all the various incarnations of the federal officer removal statute to require the averment of a federal defense"); <u>Willingham</u>, 395 U.S. at 407 (stating that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court").  In their Notice of Removal, Defendants fail to identify a federal defense arising out of their official duties, as required to support removal.  (<u>See</u> NOR at ¶¶ 16-18.)  Likewise, the state court documents do not show that any of the Defendants ever asserted federal defense arising out of their official duties in their answers or other pleadings.  (<u>See</u> Defs.' Answers, DEX A-2 at ¶¶ 2-21; A-3 at ¶¶ 1-33; A-4 at ¶¶ IV-XLVII; A-5 at ¶¶ IV-XII; A-6 at ¶¶ III-XXI; A-7 at ¶¶ 20-51; A-8 at ¶¶ 2-8.)[1]  Without any indication that they are entitled to raise the required federal defense, the Defendants cannot invoke federal officer jurisdiction.

---

[1] A few Defendants raised the defense of federal conflict-preemption in their answers.  (<u>See</u>, <u>e.g.</u>, DEX A-3 at ¶ 6.)  Preemption, however, is not a defense "*arising out of [a federal officer's] official duties*" and therefore cannot support jurisdiction under § 1442(a).  <u>See</u> <u>Manypenny</u>, 451 U.S. at 241-42 (emphasis supplies).

**B.    Federal Enclave Jurisdiction**

Defendant Safety-Kleen also argues that the Court has "federal enclave jurisdiction" over this case.  Article I, § 8 of the United States Constitution provides that:

> The Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . .

U.S. Const. art. I, § 8, cl. 1, 17.  From the fact that the United States Congress has exclusive *legislative* jurisdiction over federal enclaves, courts have reasoned that United States courts must also have subject matter jurisdiction to adjudicate controversies arising on federal enclaves.  See Mater v. Holley, 200 F.2d 123, 124-125 (5th Cir. 1953) ("It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there"); see also Reed v. Fina Oil & Chemical Co., 995 F.Supp. 705, 713 (E.D. Tex. 1998); Akin v. Big Three Industries, Inc., 851 F.Supp. 819, 822 (E.D. Tex. 1994).  Federal enclave jurisdiction is thus part of a court's federal question jurisdiction under 28 U.S.C. § 1331.  Akin v. Ashland Chemical Co., 156 F.3d 1030, 1034 (10th Cir. 1998) ("Personal injury actions which arise from incidents occurring in federal enclaves may be

-8-

removed to federal district court as a part of federal question jurisdiction"); <u>Celli v. Shoell</u>, 40 F.3d 324, 328 (10th Cir. 1994) (stating that "federal enclave jurisdiction [is] a form of federal question jurisdiction").   Thus, as a general rule, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247, 1250 (9th cir. 2006) (citing <u>Willis v. Craig</u>, 555 F.2d 724, 726 n.4 (9th Cir. 1977) (per curiam)); <u>Akin</u>, 156 F.3d at 1034.

In this case, however, the Court finds that Defendants have failed to meet their burden of showing that federal enclave jurisdiction exists.   First, the Court notes that facts supporting federal enclave jurisdiction do not appear on the face of Plaintiffs' complaint.   Rather, Plaintiffs' Original Petition provides only that:

> Michael Blahnik worked as an automotive body repairman and painter from 1966 to 1985 in Michigan, New Jersey, California, Georgia, and  Houston, and Corpus Christi, Texas.  During this time and in the course of his work, through inhalation, breathing, smelling, and/or direct contact with skin, he was exposed to benzene-containing products  including but not limited to aromatic hydrocarbons,  paints,  paint  additives,  solvents, chemicals and other carcinogenic products distributed, supplied, marketed and/or manufactured by Defendants. Michael Blahnik was diagnosed with Acute Myelogeneous Leukemia (AML) in December 2004.

(POP at ¶ 15.)   Therefore, the Defendants must have some other evidence in order to meet their burden of proving the existence of federal enclave jurisdiction.

In support of their claim of federal enclave jurisdiction,

-9-

Defendants rely solely on Plaintiffs' response to a single interrogatory, which provided:

> **INTERROGATORY NO. 6:** State the name and address of the employer, rate of payer per hour, week or month, period of employment, reason for leaving each employment for each person for whom you have worked from 1966 to 1985.
>
> **ANSWER:** . . . Subject to and without waiving the foregoing objections, Plaintiff answers as follows:
>
> . . .
>
> Army, E-3
> Ft. Hood, TX/Milwaukee, WI
> 1968-1970

(DEX D at p. 2-3.)   The Court finds, however, that this interrogatory response, standing alone, is insufficient to satisfy Defendants' burden of proving that federal enclave jurisdiction exists.   This interrogatory response provides no information regarding what *kind* of work Plaintiff performed at Fort Hood, nor does the interrogatory indicate whether Michael Blahnik was exposed to benzene-containing materials within the geographical confines of the fort.   Indeed, the interrogatory response suggests that some, perhaps even most, of Michael Blahnik's job was conducted off-site in Milwaukee, Wisconsin.   Given that this Court "must presume that a suit lies outside this limited jurisdiction," <u>Howery</u>, 243 F.3d at 916, and must construe any ambiguities "against removal," <u>Manguno</u>, 276 F.3d at 723; <u>Acuna</u>, 200 F.3d at 339, the Court cannot assume that federal enclave jurisdiction exists from a single, ambiguous response to an interrogatory.   The fact that Plaintiff Michael

Blahnik may have worked on an military base at some point in time is insufficient, the Defendants must show that Plaintiffs' causes of action can fairly be said to arise on a federal enclave.  See Akin, 156 F.3d at 1034 (only actions "which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction"); Zuniga v. Chugach Maintenance Services, C.A. 06-48, 2006 WL 769317 at *6 (E.D. Cal. March 24, 2006) (slip copy) (stating that "[t]he key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury").  Because Defendants have failed to make the required showing, the Court finds that federal enclave jurisdiction does not exist over this case.

## III. CONCLUSION

For the reasons discussed above, the Court *sua sponte* finds that subject matter jurisdiction is lacking in this case.  The above-styled action is therefore REMANDED pursuant to 28 U.S.C. § 1447(c) to the County Court at Law No. 3 in Nueces County, Texas, where it was originally filed and assigned Cause Number 06-61242.

SIGNED and ENTERED this 3rd day of October, 2006.

_____

Janis Graham Jack
United States District Judge